### In re BELMONT REALTY CORPORATION, Debtor.

#### Bankruptcy No. 89–10863.

United States Bankruptcy Court,
D. Rhode Island.

Feb. 22, 1991.

See also 116 B.R. 21.

Anthony Giannini, Jr., Providence, R.I., for debtor.

Daniel M. Glosband and David L. Ruediger, Goodwin, Procter & Hoar, Boston, Mass., for Elizabeth Bogosian.

Robert D. Wieck, MacAdams & Wieck, Inc., Providence, R.I., for Rhode Island Hosp. Trust Nat. Bank.

## AMENDED DECISION AND ORDER, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on November 17, 1990 on the motion of the secured creditor, Rhode Island Hospital Trust National Bank (RIHT), for reconsideration of our Order dated May 4, 1990, denying RIHT's motion for relief from the automatic stay, 11 U.S.C. § 362(d). We allowed the motion for reconsideration, and after hearing, in a bench decision, lifted the stay, for cause. 11 U.S.C. § 362.

On November 21, 1990, the Debtor (Belmont), and Elizabeth Bogosian, an equity security holder and a creditor of the Debtor, jointly moved to amend the November 17th Order, and requested that we: 1) provide further findings of fact and conclusions of law; and 2) extend the time by which the Debtor and/or Bogosian may file a notice of appeal of the Order until ten days from the date of the amended Order. On December 27, 1990, the Debtor and Bogosian filed a joint motion requesting that we reconsider the November 17th Order.

We grant the Debtor's and Bogosian's first joint motion, which requests amendment of the November 17th Order, and provide our Findings of Fact and Conclusions of Law, below. We also rule that the time for filing a notice of appeal runs from

the entry of judgment hereof. The Debtor's December 27 joint motion for reconsideration is DENIED.[1]

### FINDINGS OF FACT

1. On June 2, 1987, RIHT extended a loan to Belmont in the amount of $1,200,-000. To evidence the loan, Belmont executed and delivered to RIHT a promissory note in the principal amount of $1,200,000, payable on demand.

2. Also on June 2, 1987, as security for the loan, Belmont executed a mortgage covering land and improvements located on Ledge Road in Newport, Rhode Island (Newport Property), and on land and improvements located on Aquidneck Avenue in Middletown, Rhode Island (Middletown Property) (collectively the "Properties").

3. Belmont defaulted under the terms of the note.

4. On June 9, 1989, RIHT made demand for payment, which was not made, and thereafter, on August 9, 1989 RIHT notified Belmont that a foreclosure sale of the properties would take place on September 21, 1989.

5. On September 20, 1989, Belmont filed its Petition For Reorganization under Chapter 11 of the Bankruptcy Code, and in compliance with 11 U.S.C. § 362, the scheduled September 21, 1990 foreclosure sale was cancelled.

6. On November 7, 1989, RIHT filed a Motion for Relief From the Automatic Stay, and for leave to proceed with foreclosure of the Properties. After hearings on April 9 and April 16, 1990, the Bankruptcy Court, on May 4, 1990, denied RIHT's motion, without prejudice.

7. In that Decision we noted that "the Debtor's attorney has represented (without evidence) that a variety of proposals are currently being considered by the Debtor, and although said representations are not a basis for our decision, we conclude, in the circumstances it is reasonable that the Debtor be allowed an additional ninety (90) days to try and implement all or any of

---

1. We address herein the relief from stay issue raised in that December 27th motion. We find the joint-movants' hearsay arguments unpersuasive and without merit.

424

these proposals. In view of these seven (7) months which elapsed since the filing of the Bank's motion, however, and in order to monitor the Debtor's progress toward reorganization, an informal review of its accomplishments will be held in about forty-five (45) days." Ninety days from the date of our Decision was August 3, 1990.

8. On April 12, 1990, Belmont filed a motion for authority to enter into a lease of the Middletown Property, with Clay Entertainment Corporation. That motion was objected to by RIHT, and a hearing was held on June 7, 1990. In support of the proposed agreement, Belmont represented that the lease payments were to be guaranteed by Francis B. Clay and Francis J. Clay, II, for the full term of the lease, and that the Clays had a net worth "in excess of $2,000,000." It was also represented by Belmont's attorney that based upon the rental income stated in the lease, over its entire term, the lease attributed income value to the Property in an amount equal to $600,000.

9. After hearing, the foregoing representations were not confirmed by the evidence. To the contrary, we found that the "proposed lessee, who appears to be energetic and enthusiastic about the venture, in our opinion, does not have sufficient financial substance to attract or interest a knowledgeable investor to rely on the stream of income projected under the lease, and we must question the figures relied upon by the lessee at arriving at his projections, as they are unsupported by any meaningful or reliable data." [2] On June 12, 1990, we entered an Order denying Belmont's motion for authority to enter into the lease agreement.

10. After the aforementioned lease proposal was rejected by the Court, Belmont nevertheless entered into a management agreement with Francis J. Clay, II (Clay), regarding the same Middletown Property. Clay was engaged under said agreement to serve as the general manager for an "upscale nightclub." In addition, Clay was to collect all receipts from operations and was to submit on the 10th day of each month, commencing June 10, 1990, complete financial reports of the operation of the club, which reports were to include profit and loss statements, expenses and liabilities, and tax schedules.

11. Clay operated the nightclub all through the lucrative summer season, and terminated the business immediately thereafter, on September 25, 1990. Clay defaulted completely under the agreement, in that he: (a) tendered only two checks to Belmont, both of which were returned for insufficient funds; and (b) failed to submit any reports of operations, as required by the agreement.

12. On April 13, 1990, after six unproductive months in Chapter 11, and with no prospect for a successful reorganization in sight, the U.S. Trustee moved for an order pursuant to 11 U.S.C. § 1112(b), converting the Chapter 11 proceeding to a case under Chapter 7, alleging that Belmont had failed to provide many required schedules and reports, and failed to appear at the April 2, 1990 Section 341 Meeting. The U.S. Trustee stressed Belmont's demonstrated inability to effectuate a plan of reorganization, and that its conduct amounted to unreasonable delay which was prejudicial to creditors.

13. On September 10, 1990, RIHT filed a motion requesting this Court to reconsider its previous denial of RIHT's Motion for Relief From Stay, based essentially on Belmont's failure to file a plan.

14. On October 3, 1990, Belmont filed its opposition to the Motion for Reconsideration, and asked that it be allowed until October 31, 1990 to file a plan of reorganization. A hearing on the Motion for Reconsideration, etc. was held on October 25, 1990. We ruled favorably to Belmont, and allowed the Debtor until October 31, 1990 to file a plan.

15. On October 31, 1990, Bogosian, an owner of 34% of the stock of Belmont, did file a plan of reorganization, but without

**2.** Our negative characterization of the Clays' lack of financial substance turned out to be a gross understatement.

the required disclosure statement. On the same date, Bogosian filed a Motion to Extend the Date For Filing a Disclosure Statement until November 13, 1990 at 10:00 a.m. In her Motion to Extend time, Bogosian alleged that "on October 26, 1990, Ms. Bogosian learned that an individual who currently has no claim against Debtor or an interest in Debtor's assets ("New Lender") was willing to finance Debtor's reorganization." She also alleged that "Ms. Bogosian and her counsel have spent the last few days preparing the plan and negotiating the terms of the financing with the New Lender." And finally, Bogosian represented that the "disclosure statement will contain, among other things, the details of the financing that will be provided by the New Lender and a copy of the finalized commitment." Also in support of her request to extend time, Bogosian made the following assurances:

> Given the simplicity of the plan structure, the relatively recent findings by this Court of the value of the Debtor's assets, and the small number and amount of non-insider unsecured claims, there is only one major component of the disclosure statement that is not already in the record. This component, the financing commitment, will be introduced at the continued hearing with respect to the request of Rhode Island Hospital Trust National Bank ("RIHT") for relief from stay, which hearing is scheduled for 10:30 a.m. on November 13, 1990.

Believe it or not, we granted the motion for extension of time, and allowed the Debtor until November 9, 1990 to file a disclosure statement.

16. On November 9, 1990, Bogosian filed a disclosure statement which contained the vague and indefinite representation:

Financing for the modified plan is expected to be provided by Fairway Capital Corporation, a financing company incorporated under the laws of Rhode Island and located in Providence, Rhode Island (the "New Lender").

No financing commitment, formal or otherwise, was included in the disclosure statement.

17. On November 13, 1990, the continued hearing was held on RIHT's Motion for Reconsideration. When the plan proponents ran into evidentiary problems regarding alleged financing, Bogosian and Belmont were allowed the opportunity and the time to offer evidence with respect to financing,[3] but no competent evidence was provided with respect to any such commitment.[4]

18. On November 17, 1990, this Court entered an Order granting RIHT's Motion for Relief From the Automatic Stay, for cause, pursuant to 11 U.S.C. § 362(d)(1) and § 362(d)(2), based upon Belmont's clear inability to effectuate a plan of reorganization, as well as Belmont's prolonged and unproductive pattern of conduct which was intended to, and which has in fact caused unreasonable delay that is prejudicial to creditors.

19. The plan of reorganization and disclosure statement filed by Bogosian do not provide adequate information or credible means for the plan's implementation.

## CONCLUSIONS OF LAW

1. Belmont has failed to file a plan of reorganization which complies with 11 U.S.C. § 1121, within the liberal time parameters established by this Court.

2. Belmont's unfulfilled representations, its dilatory conduct as debtor in possession during the pendency of this case,

---

3. In fact, during the hearing we fairly warned Bogosian and the Debtor that unless competent evidence was produced as to the veracity of any alleged financing commitment, the absence of such evidence would cause the Court to draw a negative inference therefrom, and that the bank's motion would likely be granted. As an accommodation, the Court granted the Debtor a four hour continuance in order to produce such evidence. Even after our clear warning, no

such evidence was forthcoming, and we infer therefrom and find as a fact that the Debtor did not have the promised financing.

4. The Court denied, on hearsay grounds, the admission into evidence of Bogosian's proffered testimony concerning discussions she had had with Arnold Kilberg, the proposed lender.

and its administration of the assets of the estate have been negligent at best, and said behavior has caused unreasonable delay that is prejudicial to the movant.

3. Belmont has failed to demonstrate either a reasonable likelihood of, or the ability to effectuate a plan of reorganization within a reasonable period of time.[5]

Based upon the foregoing findings and conclusions, all as supported by the entire record in this case, we conclude that cause exists under 11 U.S.C. § 362 for granting the Motion for Relief From Stay filed by RIHT, and it is so ordered.

Enter Judgment consistent with this opinion.

---

5. It should also be remembered regarding the Debtor's main objective throughout the pendency of this case, *i.e.* to buy time, that even in defeat, since November 17, 1990, when we granted RIHT relief from stay, an additional three months have elapsed during which no positive developments have been reported by the Debtor.